UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Parker Hannifin Corporation, | : | Case No. 1:05CV1645 |
| Plaintiff | : | |
| v. | : | Magistrate Judge David S. Perelman |
| Dayco Products, LLC, et al., | : | **MEMORANDUM OPINION** |
| Defendants | : | |

The issue before this Court upon the cross-motions for summary judgment of the plaintiff, Parker Hannifin Corporation (Parker), and the defendants, Dayco Products, LLC and Mark IV Industries, Inc. (Dayco)[1] arising from an Asset Purchase Agreement (APA) entered into between Parker and Dayco under date of October 9, 2001, as to which Mark IV was a guarantor of Dayco's obligations, is the tag end of broader litigation between these parties.

Reduced to the bare essentials pertinent to these motions, the primary dispute which arose between Parker and Dayco was whether under the APA Parker was obliged to indemnify Dayco against product liability claims concerning two types of hoses manufactured and sold by Dayco. That dispute became the subject of two declaratory judgment actions brought by Parker,[2] which culminated in judgments holding that Parker was not liable to indemnify Dayco.

Parker then brought this action alleging that:

---

[1]This designation is chosen as Parker and Dayco are the principal combatants.

[2]Those actions in this court were Case No. 1:02CV2461, pertaining to what are referred to as washing machine inlet hoses, and Case No. 1:04CV0897, pertaining to what are referred to as TCI hoses.

25. By asserting the position that Parker must indemnify and defend the defendants against the underlying hose claims at issue in the Inlet Hose Case and the TCI Case, Dayco and Mark IV have asserted a claim with no reasonable basis, and they have breached the terms of the Asset Purchase Agreement.  These actions on the part of the defendants have caused Parker to sustain damages, including but not limited to:

(a) attorney fees and costs associated with defending the underlying inlet hose claims and suits;

(b) attorneys fees and costs associated with defending the underlying TCI claims and suits;

(c) attorneys fees and costs associated with the inlet hose declaratory judgment action and appeal;

(d) attorneys fees and costs associated with the TCI declaratory judgment action and appeal;

(e) fees and costs associated with the national coordinating counsel Parker retained to coordinate Parker's response to the inlet hose and TCI hose claims and suits;

(f) fees and costs associated with the third party administrator Parker retained to handle the inlet hose and TCI claims and suits; and

(g) fees and costs associated with Parker's in-house legal department and managers allocable to the inlet hose and TCI claims and suits.

At a settlement conference mediated by Magistrate Judge Hemann the parties reached resolution of all but one of Parker's claims, the remaining issue being whether Dayco must indemnify Parker for the costs, fees and expenses incurred by Parker in prosecuting the two declaratory judgment actions.[3]  They agreed that this issue would be submitted to this Court under

---

[3] The parties agreed that the amount which Parker could recover would be $350,000.

the cross-motions which are now ripe for decision.

The pivotal clause in the APA, upon which Parker's claim rests, provides:

> [Dayco] shall...indemnify, save and hld harmless [Parker]...from and against any and all losses incurred in connection with, arising out of, resulting from or incident to (i) any breach of any representation or warranty or the inaccuracy of any representation, made by [Dayco] in or pursuant to this Agreement; (ii) any breach of any covenant or agreement made by [Dayco] in or pursuant to this agreement..., (iii) any retained liability ..., and (iv) Liabilities of the Sold Subsidiary of a kind equivalent to the Retained Liabilities.

APA §9.4(a).

The APA defines the losses as:

> [I]n respect of the indemnification obligations of any party pursuant to this Agreement, any and all actual costs, losses, liabilities, obligations, damages, deficiencies and other reasonable out-of-pocket expenses, including without limitation interest, penalties, reasonable attorney's fees and all amounts paid in investigation defense or settlement of Actions relating to Losses.

APA §1.1.

Another provision of the APA referencing legal fees provides:

> Except as otherwise specified in this Agreement, each party shall pay its own legal, accounting, out-of-pocket and other expenses in connection with, arising out of or incident to this Agreement...and the transactions contemplated hereby and thereby...

APA §10.7.

There is also an extensive provision regarding procedures for giving notice of a claim which may give rise to a right of indemnification, which, considering its length, this Court sees no point in setting out herein, being APA §9.4(c).

Section 10.4 of the APA provides that "This Agreement shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of New York (without

reference to the choice of laws provisions of New York law)."

This Court has given careful consideration to the arguments advanced by the parties and to the New York authorities upon which they each rely, in particular Pfizer, Inc. v. Stryker Corp., 348 F.Supp 139 (S.D.N.Y. 2004), which Parker maintains is on all fours, and Hooper Associates, Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 548 N.E.2d 903 (N.Y. 1989), which Dayco maintains negates Pfizer. This Court finds sufficient differences between the contractual language construed in each of those cases and that of the APA that, while each is instructive, neither is deemed controlling. The same is true with regard to the other New York cases this Court has reviewed.

What this Court does consider to be controlling is the admonition in Hooper that "In as much as a promise by one party to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." Id., at 492.

It may well be a tribute to the skills of counsel for this Court to say that this Court finds plausible the interpretations each advances of the provisions of the APA which are set out and referenced herein. If the controlling standard was the normal preponderance of the evidence this Court would have to make the difficult decision which tipped the balance. However, with the controlling standard being "unmistakably clear," this Court has no hesitation in holding that neither party has been able to lead this Court to that end of the more rigorous spectrum.

This being so, Parker bearing the burden of persuasion it necessarily follows that judgment must be entered denying it's motion and granting that of Dayco/Mark IV and entering final judgment in their favor.

                                                                    s/DAVID S. PERELMAN
                                                                    United States Magistrate Judge

DATE:   June 15, 2006